IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MONICA AUSTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-13-SMD |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| *Acting Commissioner of Social Security*,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION & ORDER**

In August 2016, pro se Plaintiff Monica Austin ("Austin") filed for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, and for Supplemental Security Income ("SSI") under Title XVI. She alleged disability beginning August 1, 2016. Austin's application was denied at the initial administrative level, and she received an unfavorable decision after a hearing before an Administrative Law Judge ("ALJ"). Austin appealed the ALJ's decision to the Social Security Appeals Council where she submitted new evidence. The Appeals Council denied review and concluded that there was not a reasonable possibility that the new evidence would change the ALJ's decision. Consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Austin now appeals that decision under 42 U.S.C. § 405(g).[2] For the

---

[1] Kilolo Kijakazi, the acting Commissioner of the Social Security Administration, is substituted for Andrew Saul as Defendant in his official capacity in this action under Federal Rule of Civil Procedure 25(d)(1).

[2] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate

reasons that follow, the undersigned REVERSES and REMANDS the Commissioner's decision.

## I. STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's

---

Judge conducting all proceedings and entering final judgment in this appeal. *Pl.'s Consent* (Doc. 11); *Def.'s Consent* (Doc. 12).

[3] *McDaniel* is a SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004). A claimant's RFC is what the claimant can still do—despite his impairments—based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy the claimant can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines[4] or (2) the testimony of a vocational expert ("VE").[5] *Id.* at 1239-40.

## II.   STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the correct legal standards were applied. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial

---

[4] Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[5] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

evidence or the proper legal standards were not applied in the administrative proceedings. *Carnes v. Sullivan*, 936 F. 2d 1215, 1218 (11th Cir. 1991).[6]

"Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F. 2d at 1145.

### III.   AUSTIN'S MEDICAL HISTORY[7]

Austin was involved in a car accident on April 11, 2013. Tr. 267. She reported to the ER, where a CT scan was performed. Tr. 311, 408-14. The CT scan indicated normal findings and no acute abnormalities. Tr. 311. Upon discharge, Austin was prescribed muscle relaxants and pain medication. Tr. 267.

---

[6] A court is required to give deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145 (11th Cir. 1991).

[7] The undersigned sets forth Austin's medical history within this section, which includes records that predate her alleged onset date. The Social Security Regulations require an ALJ to "consider all evidence in [the claimant's] case record when [making] a determination or decision whether [the claimant is] disabled." 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). Here, although many of Austin's medical records are prior to her alleged onset date, they concern her back pain. Therefore, these records are relevant to Austin's claims and should be considered when determining whether she is disabled. *See Hamlin v. Astrue*, 2008 WL 4371326, at *4 (M.D. Fla. Sept. 19, 2008) (finding that an ALJ erred by failing to consider an entire body of relevant medical evidence that predated the claimant's alleged onset date).

On April 17, 2013, Austin began physical therapy for neck and back pain that resulted from the accident. Tr. 267. An MRI of her lower spine was performed on May 21, 2013. Tr. 415. The MRI indicated "[s]ome loss of lumbar lordosis"; a "[p]artial disc dessication at L5/S1 level"; "[s]mall posterocentral focal disc protrusion indenting thecal sac at L5/S1 level"; and "[s]mall right paracentral disc oseophyte complex and right thickened ligamentum flavum at T11/12 level causing moderate right lateral recess stenosis; mild right thickened ligamentum flavum at T12/L1 indenting thecal sac." Tr. 415.

On May 22, 2013, Austin's physical therapist referred her to Dr. Patrick Ryan for a neurosurgical evaluation. Tr. 271. Dr. Ryan saw Austin on July 1, 2013. Tr. 317-19. During that visit, Austin indicated that physical therapy was providing some relief. Tr. 317. Dr. Ryan referred Austin for a "cervical and lumbar epidural steroid injection series." Tr. 319. He also prescribed Mobic and gave her an "over-the-door cervical traction." Tr. 319.

Austin received epidural injections on July 9, 2013; August 1, 2013; and August 15, 2013. Tr. 826-34. Treatment notes indicate that, while the first injection provided Austin with some pain relief, the second did not. Tr. 826, 829. On September 16, 2013, Dr. Ryan spoke with Austin over the phone. Tr. 316. He noted that the epidural injections had been unsuccessful in treating Austin's pain, as had the Mobic and the physical therapy. Tr. 316. At that time, Dr. Ryan explained surgical options, but Austin indicated that she was not ready to proceed with that course of treatment. Tr. 316. On March 12, 2014, Dr. Ryan saw Austin for a follow-up visit. Tr. 316. He noted again that Austin had failed "all conservative treatment options" but was not ready to proceed with surgery. Tr. 316.

From April 1, 2014, through October 8, 2015, Austin received more eight epidurals, each with varying degrees of success in managing her pain. Tr. 818-53. For example, Austin's April 2014 injection provided her with 75% relief for twelve days. Tr. 838. Her September 2014 procedure provided her with 60% relief for approximately twelve weeks. Tr. 842. And, Austin's October 2015 injection afforded her 60% relief for three months. Tr. 824. Austin received another four epidurals between August 23, 2016, and February 22, 2018. Tr. 818-56. Like the previous series of injections, these epidurals produced varying degrees of relief. For example, Austin's August 2016 injection provided her with 75% relief for three months. Tr. 818. Her April 2017 injection gave her 60% relief for one month. Tr. 822. And, her September 2017 injection afforded her 60% relief for two months. Tr. 824.

During the time Austin was receiving spinal injections, she also sought treatment from Baptist Health Physician Group ("Baptist Health") for pain management. Tr. 585-794. At her August 18, 2016 visit, Austin reported that she had an average pain level of 8/10 and that her medications did not help. Tr. 646. She was advised to continue with epidural injections and agreed to a pain management goal of 2-4/10 daily. Tr. 646-47. Austin indicated that she did not want to consider surgery, and her physician agreed that her "MRI [did] not show any surgical corrections needed." Tr. 647. Approximately one month later, Austin returned to Baptist Health and reported that her job, which required her to sit at her desk, was causing her back pain to worsen. Tr. 630. She requested that an American Family Life Assurance Disability Claim Form be completed on her behalf,

recommending that she take "3 days off work for her back pain then reassess after 6 months."[8] Tr. 630. Austin's physician concluded there was "[n]o medical justification for 3 days off work for 6 months" as Austin requested, so she instead wrote a letter seeking accommodation for Austin as her employer saw fit. Tr. 628, 630. During her visit the following month, Austin reported that her neck pain was 9/10 and that her back pain was sharp/dull. Tr. 593. Treatment notes from that visit indicate that ibuprofen and Flexeril were failing to control her symptoms. Tr. 593.

In addition to receiving treatment at Baptist Health, Austin visited the ER at least ten times for management of her back pain from October 2013 through September 2018. Tr. 344-45; 413; 421-584; 811; 875.[9] In July 2016, Austin was admitted for two days. Tr. 459-493. During that admission, Austin received a CT scan of her lumbosacral spine and an MRI of her thoracic spine. Tr. 481-82. Neither showed abnormalities. Tr. 481-82. Nonetheless, Austin complained of unrelenting pain that was not being adequately addressed by her current medications, physical therapy, or injections. Tr. 466. Notes from that visit reflect that Austin was considering surgery. Tr. 469. On September 19, 2016, Austin went to the ER after a car door was slammed on her back. Tr. 423-41. On July 27, 2017, Austin reported to the ER for exacerbation of chronic back pain. Tr. 875. Notes

---

[8] It is not clear whether Austin was requesting that she be excused for three days per week for six months or three days per month for six months.

[9] These ER visits occurred on October 30, 2013; November 18, 2013; August 21, 2014; April 4, 2015; January 28, 2016; June 13, 2016; July 25, 2016; September 19, 2016; July 27, 2017; and September 27, 2018.

indicate that Austin should "[c]all for a follow up appointment if [she changed her] mind about surgery." Tr. 875. The last ER visit in the record occurred on September 27, 2018, where Austin once again sought relief for back pain. Tr. 811.

As for her medication therapy, Austin's medical records indicate that, throughout her treatment history, she has been prescribed multiple medications to alleviate her pain. These medications include, *inter alia*, Norco (Tr. 322), Mobic (Tr. 324), Lortab (Tr. 325), Ibuprofen (Tr. 593), Flexeril (Tr. 593), Diclofenac (Tr. 593), Tizanidine (Tr. 593), Tramadol (Tr. 606), Cyclobenzaprine (Tr. 606), Ketorolac injection (Tr. 630), Lyrica (Tr. 641), Medrol Dosepak (Tr. 652), Lidocaine topical (Tr. 642), and Aleve (Tr. 647). At the time she reported for her consultative examination in April 2017, Austin was taking Robaxin once a day and alternating between Indocin, Mobic, Lodine, and Aleve. Tr. 806. She was also taking Lyrica 25mg twice a day, Lortab 10mg twice a day, and an unspecified dose of Flexeril. Tr. 806. At the hearing before the ALJ on August 30, 2018, Austin testified that she was taking Tramadol. Tr. 46. She indicated that it "puts [her] out," but if she is up and moving around too much, she is in pain. Tr. 46.

## IV.  ADMINISTRATIVE PROCEEDINGS

Austin, who was forty-one years' old at the time of the ALJ's decision, has an associate degree in nursing and past work experience as a practical nurse. Tr. 34, 37-41. She alleged disability due to back pain and obesity. Tr. 41-47, 67, 203.

In the administrative proceedings before the Commissioner, the ALJ made the following findings with respect to the five-step evaluation process for her disability

determination. At step one, the ALJ found that Austin has not engaged in substantial gainful activity since her alleged onset date. Tr. 15. At step two, the ALJ found that Austin suffers from the following severe impairments: "degenerative disc disease and obesity[.]" Tr. 16. At step three, the ALJ found that Austin "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" Tr. 16-17.

> The ALJ proceeded to determine Austin's RFC, articulating it as follows:
>
> [T]he claimant has the residual functional capacity to perform a range of light work. Specifically, the claimant is able to lift and carry up to 20 pounds occasionally and up to 10 pounds frequently. She can push and pull within the same exertional limits. She can stand or walk for about 6 hours altogether and she can sit for at least 6 hours out of an 8-hour workday. She can occasionally stoop, crouch, kneel, crawl, and climb—but not ladders, ropes, or scaffolding. She is able to perform tasks not involving the operation of vibrating tools or equipment. She is able to perform tasks not involving exposure to temperature extremes or exposure to workplace hazards such as unprotected heights and dangerous moving machinery.

Tr. 17. At step four, the ALJ utilized the testimony of a VE and determined that Austin is "unable to perform any past relevant work[.]" Tr. 22. At step five, the ALJ concluded that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." Tr. 22. These jobs include: "Office Helper," "Assembler," and "Inspector-Checker." Tr. 23. Accordingly, the ALJ determined that Austin had not been under a disability from August 1, 2016, through the date of his decision. Tr. 23.

V.     **ANALYSIS**

Austin claims that she is unable to work because of constant, debilitating pain. *Pl.'s Br.* (Doc. 18) pp. 1-2. She states that the pain goes from her back, to her buttocks, down her legs, and to the bottom of her right foot. *Id.* at 2. She further asserts that she cannot stand or sit for prolonged periods of time and that some days she lays in bed rocking and crying because of the pain. *Id.* Austin states that physical therapy and spinal injections have not worked. *Id.* Austin also asserts that she has recently undergone a discogram and been diagnosed with annular tears in her back that leak fluid. *Id.* at 1. She states that she has "once again been referred for surgery and plans have been made to do so." *Id.*

Construing Austin's pro se brief liberally, Austin argues that: (1) the ALJ improperly discounted her pain symptoms; and (2) her new medical evidence warrants remand of her applications. For the reasons explained below, the undersigned finds that the ALJ erred in discounting Austin's pain testimony. Because this alone requires remand, the undersigned declines to address Austin's remaining argument.

**A. Pain Testimony**

In the function report she completed in January 2017, Austin stated that she is limited in lifting, kneeling, squatting, bending, reaching, walking long distances, sitting for extended periods, and climbing stairs. Tr. 221. She reported that she has difficulty performing household chores such as cleaning and cooking. Tr. 218-19. Austin stated that she wears a back brace daily and stretches with an over-the-door traction device. Tr. 221-22. She also indicated that her medication makes her drowsy and disoriented. Tr. 222.

At the hearing before the ALJ, Austin claimed that her legs sometimes give out and that some days she can barely get up because of her pain. Tr. 41. She stated that she works from 8:00 a.m. to 3:00 p.m. two days per week, but that her days have been cut due to her inability to stand and perform her job. Tr. 36. Austin testified that she cannot drive for long periods of time and that she can lift less than five pounds, stand or walk for around ten minutes, and sit for ten minutes.[10] Tr. 37, 40-43. She noted that she receives back injections three or four times during the year, but they sometimes do not alleviate her pain. Tr. 43-44. She further testified that she has been referred numerous times for surgery but cannot afford it. Tr. 46. When discussing her medication, Austin indicated that she was taking Tramadol, which "puts [her] out" and does not alleviate her pain when she is moving about. Tr. 45-46.

**B. Applicable Law**

A claimant can establish disability through personal testimony about pain or other symptoms. *Marksuke v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 766 (11th Cir. 2014). To establish disability based on pain testimony, a claimant must show: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). A claimant's testimony coupled with evidence that meets this

---

[10] Notably, this testimony indicates that Austin is more limited than the ALJ's RFC determination.

standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citations omitted).

If the ALJ determines that a claimant has a medically determinable impairment that could reasonably be expected to produce pain, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms to determine if they limit her capacity to work. 20 C.F.R. § 404.1529(c)(1). In making this evaluation, the ALJ may consider a variety of factors, including objective medical evidence, treatment history, response to medication and other treatments, sources of pain relief, and the claimant's daily activities. 20 C.F.R. § 404.1529(c)(1)-(4). If an ALJ rejects a claimant's subjective testimony regarding her symptoms, the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225. These reasons must "be consistent with and supported by the evidence[.]" SSR 16-3p, at *9.

### C. Application

The ALJ summarized Austin's reports of her subjective symptoms and resulting limitations and concluded that Austin's medically determinable impairments "could possibly be expected to cause to some degree the symptoms [she] alleged," but that her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 18. The ALJ based this conclusion on what he characterized as: (1) Austin's "routine and conservative treatment history," and (2) her "generally benign physical examinations." Tr. 18. Neither reason is supported by substantial evidence in the record.

### 1. *Routine and Conservative Treatment*

For three reasons, the ALJ's discount of Austin's pain testimony—based on what he considered to be "routine and conservative treatment"—is not supported by substantial evidence.

First, the ALJ's characterization of Austin's treatment as "routine and conservative" is misplaced. Austin has been prescribed Tramadol, Lortab, and Norco, all of which are strong pain medications. She also receives cervical epidural steroid injections three or four times during the year. The Eleventh Circuit and courts within it have indicated that this course of treatment is not conservative.[11]

Second, Austin's medical history shows that the treatment she received was largely unsuccessful in managing her pain. Indeed, the ALJ noted that, in August 2016, Austin rated her average daily pain level as 8/10 despite some relief from NSAIDs, epidural injections, and other medications. Tr. 19-20. He further noted that, in October 2016, Austin

---

[11] *See, e.g.*, *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 (11th Cir. 2015) (noting that the claimant "received Tramadol, a narcotic-like medication used to treat severe pain" and that the magistrate judge relied on this evidence in rejecting a physician's opinion because "[u]se of strong pain medication is not consistent with the finding that [the claimant's] treatment was conservative"); *Creach v. Comm'r of Soc. Sec. Admin.*, 2020 WL 1243245, at *4 (M.D. Fla. Mar. 16, 2020) (noting that the claimant "underwent additional non-conservative treatment in the form of cervical epidural steroid injections"); *Smith v. Berryhill*, 2019 WL 1281200, at *5 (N.D. Ala. Mar. 20, 2019) (noting that the claimant was "treated conservatively with medication" but "eventually progress[ed] to more invasive measures, like cervical epidural injections"); *Rebelo v. Acting Comm'r of Soc. Sec.*, 2017 WL 4277541, at *8 (M.D. Fla. Sept. 27, 2017) ("It is a stretch to characterize as 'conservative' treatment with such strong pain medication as under the circumstances here."); *Wheelock v. Comm'r of Soc. Sec.*, 2017 WL 3267800, at *5 (M.D. Fla. June 28, 2017) ("Use of strong pain medication is not consistent with the ALJ's finding that Dr. Shea's treatment of [the claimant] was conservative."); *Allen v. Colvin*, 2013 WL 1200616, at *18 (N.D. Fla. Mar. 25, 2013) (noting that "the very nature of treatments . . . administered—diagnostics, lumbar epidurals, and branch blocks—indicate more than a conservative treatment").

continued to complain of pain and that her medications were switched as a result. Tr. 19-20. The ALJ also discussed the epidurals Austin received between April 2017 and February 2018, indicating that each provided approximately 60-75% relief for 1-3 months. Tr. 20. And, during this same timeframe, the ALJ noted that Austin visited the ER twice seeking back pain relief—once in July 2017 and once in September 2018. Tr. 20.

Per the ALJ's own discussion of the medical evidence, Austin's treatment did not adequately address her pain. Indeed, the ALJ recognized that Austin consistently sought pain management from several sources, including the ER; she received multiple epidurals that provided her with varying degrees of relief for inconsistent periods of time; and her medications, which were insufficient in alleviating her pain, were adjusted by her physicians. Under these circumstances, the ALJ's decision to discount Austin's pain testimony—based on treatment that did not sufficiently address her pain—is not sound.[12]

Third, evidence before the ALJ suggests that Austin did not pursue more aggressive treatment—namely, surgery—because she could not afford it. The Eleventh Circuit has

---

[12] *See, e.g.*, *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 64-65 (11th Cir. 2010) (finding that the ALJ erred in discrediting the claimant's testimony when the claimant consistently reported her symptoms and physicians consistently credited her condition); *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (finding that the record did not support the ALJ's conclusion that physical therapy and epidural shots alleviated the claimant's pain enough to discredit her pain testimony because: (1) the records showed that physical therapy afforded the claimant "only partial and short-lived relief of her lower back pain," (2) the epidural shots relieved the claimant's pain "for only variable, brief periods of time, ranging from a couple of months to a few days," and (3) pain pills "provided only limited periods of relief from the otherwise constant pain"); *MacFarlane v. Berryhill*, 2018 WL 6528460, at *7 (N.D. Ala. Dec. 12, 2018) (noting that the ALJ failed to reconcile the evidence showing that the claimant continued to seek treatment for continued pain after epidural injections that "provided only temporary relief"); *Grier v. Colvin*, 117 F. Supp. 3d 1335, 1351 (N.D. Ala. 2015) (finding that the ALJ improperly discounted a claimant's treatment for degenerative disc disease as "routine and conservative" when the claimant continuously complained of back pain while also getting little to no relief from medication).

made clear: "[T]he ALJ may not draw any inferences about an individual's symptoms and [her] functional effects from a failure to seek or pursue medical treatment without first considering any explanation that might explain the failure to seek or pursue treatment." *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012).

Here, at the hearing before the ALJ, Austin testified that she had been "referred out numerous times for surgery" but could not afford it. Tr. 45.[13] The ALJ did not address this testimony in his opinion. Instead, he merely noted that Dr. Ryan discussed surgical intervention with Austin "after failed conservative treatment" and then stated, in conclusory fashion, that Austin "never had the surgery." Tr. 18. Absent further factual development regarding Austin's financial ability to pursue more aggressive treatment, it was improper for the ALJ to infer that Austin's pain testimony was not credible based on her receipt of routine and conservative treatment. *See Henry*, 802 F.3d at 1269 (holding that the ALJ erred in discounting the claimant's pain testimony without fully and fairly developing the record regarding the claimant's financial ability to pursue a more aggressive treatment).[14]

---

[13] During the hearing before the ALJ, Austin, who proceeded pro se, testified that she had been "referred out numerous times for surgery." Tr. 45. The ALJ responded: "So did you get any surgery then?" Tr. 45. Austin replied: "I didn't because I can't afford surgery." Tr. 45. The ALJ did not ask any follow-up questions regarding Austin's inability to pay and, instead, proceeded to question Austin about her activities at home. Tr. 45.

[14] Of course, an ALJ's failure to consider a claimant's good-cause explanation for not seeking medical treatment does not always constitute reversible error. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). Indeed, reversible error occurs only when the ALJ "primarily if not exclusively" relies on a claimant's failure to seek treatment in determining whether the claimant is disabled. *Id.* Here, the ALJ did not solely rely on Austin's lack of surgery in determining that she was not disabled. As such, this error, standing alone, may not constitute reversible error. However, because there are other reasons, as set forth above, leading the undersigned to conclude that substantial evidence does not support the ALJ's decision

15

Because the undersigned concludes that: (1) Austin's treatment was mischaracterized as "routine and conservative"; (2) Austin's medical history shows that the treatment she received was insufficient in addressing her pain; and (3) the ALJ did not develop the record as to Austin's financial ability to pursue surgery, the undersigned finds that the ALJ's discount of Austin's pain testimony based on "routine and conservative treatment" is not supported by substantial evidence in the record.

### 2. *Generally Benign Physical Examinations*

The ALJ's decision to discount Austin's pain testimony based on what he considered to be "generally benign physical examinations" is not supported by substantial evidence. Assuming arguendo that Austin's physical examinations are properly characterized as "generally benign,"[15] the ALJ failed to sufficiently explain how those physical findings undermine Austin's pain testimony.

---

to reject Austin's pain testimony based on her receipt of routine and conservative treatment, the undersigned declines to make a finding as to whether the ALJ's failure to develop the record regarding Austin's ability to afford surgery is reversible.

[15] The undersigned questions the ALJ's characterization of Austin's physical examinations as "generally benign." The ALJ pointed to four physical examinations performed between August 2016 and October 2016 in support of his conclusion that Austin had benign physical examinations. During one such examination, Austin "had a *positive straight leg raise* on the right but not on the left" and a "full range of motion in the extremities, normal gait, normal muscle strength and tone, and no tenderness or effusions." Tr. 18 (emphasis added). He also recited an examination, wherein Austin had "normal range of motion in the musculoskeletal system, normal strength, and no tenderness, swelling, or deformity." Tr. 18. However, the ALJ did *not* note that, during this same examination, Austin showed midline, moderate tenderness and vertebral point tenderness at her L4-5. Tr. 427. Next, the ALJ pointed to an examination where Austin exhibited "full range of motion of the cervical spine *but pain with maximal extension and flexion*." Tr. 18 (emphasis added). During that examination, Austin also showed "a negative straight leg raise bilaterally, normal gait, normal muscle strength and tone, and no tenderness or effusions noted in the musculoskeletal system." Tr. 18. Finally, the ALJ pointed to an examination wherein Austin "had *a positive straight leg raise bilaterally* and *pain with maximal extension and flexion* but was able to accomplish the movements." Tr. 18 (emphasis added). During that visit, Austin "had full range of motion of the cervical spine, normal gait, normal muscle strength and tone, and no tenderness or effusions." Tr. 18.

Austin testified that she is limited in lifting, kneeling, squatting, bending, reaching, walking long distances, sitting too long, and climbing stairs. Tr. 221. She noted that she needs assistance with cleaning and cooking. Tr. 218-19. She claimed that she cannot drive for long periods of time and that she can lift less than five pounds. Tr. 37, 40-43. Austin's physical examinations generally indicate that she has normal gait, muscle strength and tone, and range of motion. However, the ALJ did not explain how these physical examinations contradict Austin's testimony. And, the undersigned cannot conclude that the contradiction, if any, is obvious or inherent.

Indeed, Austin's ability to exhibit a normal gait during a physical examination does not conflict with her testimony that she cannot walk for long distances. Her normal range of motion does not undermine her claim that she cannot stand for long periods of time

---

Pain upon physical examination may result in abnormal findings even when a claimant exhibits normal movement and normal gait. *See Lopez v. Comm'r of Soc. Sec. Admin.*, 2020 WL 6203876, at *5 (N.D. Ala. Oct. 22, 2020) ("Normal movement and normal gait and station are only a portion of the physical examination. The ALJ failed to discuss the remaining portion of [the claimant's] physical examinations, which showed pain with movement of the lower back and pain with movement of his neck, *both resulting in abnormal findings*.") (emphasis added)); *Lopez v. Berryhill*, 2019 WL 2501928, at *7 (S.D. Cal. June 17, 2019) (finding that the ALJ erred in discounting the claimant's pain testimony based on "benign" examinations where, upon examination, the claimant indicated pain, tenderness, inability to do knee raises, etc.).

Here, Austin's physical examinations indicate that she was in pain, despite normal findings associated with her flexion and gait. Even the consultative physician, to whom the ALJ afforded substantial weight, indicated that Austin exhibited pain and limited flexion during examination. Tr. 21, 807 (The ALJ summarized the consultative physician's findings as follows: "During the evaluation, [Austin] had limited anterior flexion of her back to 60 degrees and complained of back pain with straight leg raise to 60 degrees bilaterally."). Under these circumstances, the undersigned finds it concerning that the ALJ characterized Austin's physical examinations as "generally benign," when they indicated she experienced pain with movement and a reduced range of motion. *See Collier v. Saul*, 407 F. Supp. 3d 1201, 1214 (N.D. Ala. 2019) (finding that the ALJ's discount of the claimant's pain testimony based on normal physical examinations was not supported by substantial evidence because a "claimant's ability to exhibit a full range of motion of her extremities, for example, does not discount the pain or numbness she may feel in those extremities").

without pain. Similarly, any normal muscle strength and tone that Austin exhibited during a physical examination does not cut against her testimony that she cannot lift more than five pounds.

To be sure, Austin's physical examinations may, to some degree, conflict with her testimony regarding her pain. However, because this conflict is not apparent through the ALJ's summary of Austin's pain testimony and the summary of her physical examinations, the undersigned is left to speculate as to where the conflict lies. This precludes the undersigned from conducting a meaningful review as to whether Austin's "generally benign physical examinations" undermine her pain testimony.[16] As such, the undersigned is unable to find that the ALJ's discount of Austin's pain testimony—based on her generally benign physical examinations—is supported by substantial evidence.

---

[16] *See, e.g., Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (holding that the ALJ's failure to identify the conflict between the claimant's medical records and pain testimony constituted reversible error); *Judith D.S. v. Comm'r Soc. Sec. Admin.*, 2021 WL 3705140, at *5-8 (D. Ore. Aug. 20, 2021) (finding that the ALJ erred in rejecting the claimant's subjective symptom testimony "by not linking particular parts of [the claimant's] testimony to parts of the medical record that purportedly undermine her testimony"); *Cooper v. Saul*, 2020 WL 2735384, at *9 (D. Haw. May 26, 2020) ("Where, as here, the ALJ has not linked [the claimant's] testimony with evidence contradicting the testimony, the Court is unable to ascertain whether the ALJ provided specific, clear, and convincing reasons for rejecting [the claimant's] testimony.").

## VI.  CONCLUSION

The ALJ's decision to discount Austin's pain testimony based upon what he characterized as "routine and conservative treatment" and "generally benign physical examinations" is not supported by substantial evidence in the record. Therefore, the decision of the Commissioner is REVERSED and REMANDED.  A separate judgment will issue.

DONE this 20th day of September, 2021.

_____
Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE